CARTER (BRETT v.). See Case No. 1,844.

## Case No. 2,473.
### CARTER v. The BYZANTIUM.
[1 Cliff. 1.] [1]

Circuit Court, D. Maine. April Term, 1858.

MARITIME LIEN—EFFECT OF TAKING BILLS OF EXCHANGE FOR ORIGINAL DEBT.

1. A lien for repairs and supplies furnished at Norfolk, Virginia, on a ship owned in Maine, is not lost by the creditor taking bills of exchange on one of the owners, which bills were produced in court to be surrendered or cancelled.
[Cited in The Eclipse, Case No. 4,268.]

2. How far, according to the law of Maine and Massachusetts, the taking of a promissory note, by a simple creditor, is an extinguishment of the original debt.
[Cited in The Dubuque, Case No. 4,110.]
[See note at end of case.]

[3. Cited in The Helen M. Pierce, Case No. 6,332, to the point that the presumption of payment arising from the acceptance of nego-

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

tiable paper is merely one of fact, which may be controlled by circumstances indicating a contrary intention.]

[See note at end of case.]

[Appeal from the district court of the United States for the district of Maine.]

In admiralty. This was an admiralty appeal. The schooner Byzantium, owned by parties residing in the state of Maine, arrived at Norfolk, Virginia, in need of repairs and supplies in order to enable her to proceed in safety to her port of destination. At the request of the master, the libellant [David Carter] furnished the necessary supplies and materials and paid for the repairs. When the vessel was refitted, the master drew two bills of exchange on one of the owners in Maine, in favor of the libellant, for the amount then due him, which bills were accepted by the drawee, but were afterwards dishonored. Suit was commenced on the bills, but was never entered in court. It was in evidence that the taking of such bills of exchange, in the absence of a special agreement, was not considered, according to the custom of merchants at Norfolk, as a waiver of the maritime lien on the vessel for repairs, materials, and supplies. In the libellant's account with the schooner, she was credited with the drafts, and appended to the description of them was a recital in the nature of a receipt, as follows,—"Which when paid will be in full of account." Upon the arrival of the vessel in Maine, a libel in rem was filed, claiming to recover on the original account, and the drafts were produced at the trial, and offered to be surrendered. After a hearing, the district judge decreed that the libellant recover the full amount of his account with interest [unreported]. From this decree the claimants [True W. Townsend and others] appealed.

Deblois & Jackson, for libellant.
John Rand, for claimant.

CLIFFORD, Circuit Justice. It is insisted by the respondent that the bills of exchange were received by the libellant in payment of the debt contracted for the repairs and supplies, and that the effect of the transaction, under the law of Maine, was to extinguish the original debt, and of course to discharge the maritime lien upon the vessel. The proposition assumes that the transaction is governed by the law of Maine, where the bills were accepted, and not by the law of Virginia, where they were drawn and received by the libellant. When a party, bound to a simple contract debt, gives his own negotiable security for it, whether a bill of exchange or promissory note, the law of Maine, as expounded in the decisions of her courts, presumes as a matter of fact, in the absence of any circumstances to indicate a contrary intention of the parties, that the bill or note was given and received in satisfaction and discharge of the pre-existing debt. That rule was adopted in Massachusetts before Maine was admitted as an independent state, and has since been followed by the tribunals of both states in repeated decisions. Thacher v. Dinsmore, 5 Mass. 302; Varner v. Nobleborough, 2 Greenl. 121. Very little embarrassment results from the rule, when its application is kept, as it should be, within the bounds of the principle which the rule itself announces. It is merely a presumption of fact, and may be controlled by circumstances indicating a contrary intention. No such presumption arises at common law, or in Virginia, where the bills were drawn and received. One of the principal reasons assigned for the rule by the courts of Maine and Massachusetts is, that if an action may be maintained for the original debt, the debtor may also be sued by an innocent indorsee of the bill or note, and thus be compelled to pay the debt a second time. That difficulty is obviated at common law, and in all the other states where the common-law rule prevails, by requiring the bill or note to be produced at the trial, so that it may be cancelled when the judgment is rendered on the original contract.

None of the decisions in Maine or Massachusetts go further than to hold that the bill or note is a presumption of payment; and all admit that the presumption is merely one of fact, and may be controlled by circumstances; in which case the bill or note, as at common law, must be produced, if in existence, to be cancelled. Where the rule prevails, the new security is merely the substitution of the second promise for the first; and the reasons assigned for it show that it ought not to be adopted except when the remedy upon the former is as effectual as upon the latter. Accordingly, where one of the joint owners of a vessel purchased supplies for her, and gave therefor a negotiable promissory note in their joint names, but without authority from the other owners, it was held that the note was not an extinguishment of the original cause of action, and that the plaintiff might recover on the original promise. Wilkins v. Reed, 6 Me. 220. To the same effect, also, is the case of Descadellas v. Harris, 8 Me. 298, where it was expressly held, that a negotiable security given in a foreign country is not to be regarded in the courts of Maine as an extinguishment of a simple contract debt created abroad, unless it is so considered by the laws of the country where the contract was made. That case is also a direct authority to the point that the giving of such security is only presumptive evidence of the intent to extinguish the prior simple contract debt, and that, like all other presumptions of fact, it is liable to be repelled by the circumstances. Some of the circumstances which will repel that presumption were considered by the court in that case, and others have been considered in still later cases.

In Fowler v. Ludwig, 34 Me. 455, Shepley, C. J., said, if the negotiable paper was accepted in ignorance of the facts, or under a misapprehension of the rights of the parties, it has been held that the presumption might be considered as rebutted. French v. Price, 24 Pick. 13. So if the paper accepted is not binding upon all the parties previously liable; or if the paper of a third person be received, not expressly in payment, the presumption may be considered as repelled. Melledge v. Boston Iron Co., 5 Cush. 158. Any fraud or undue advantage practised by the debtor in procuring the acceptance of the new security will have the effect to defeat that presumption; and in such case the creditor may resort to the original promise to recover his debt. Hervey v. Harvey, 15 Me. 357.

In determining the question whether the creditor intended to extinguish the original promise, the fact that he held collateral security for the performance of the contract is a material circumstance, and has so been considered in courts where it is held that the unexplained reception of the new security afforded a prima facie presumption that it was received in payment; and the courts of Maine and of Massachusetts have nowhere held that it is not sufficient of itself to rebut the presumption that the creditor intended to accept the negotiable note as a substitute for the original promise, so as to deprive him of his collateral security. On the contrary, the case of Butts v. Dean, 2 Metc. [Mass.] 76, affords strong ground to conclude that the supreme court of Massachusetts is inclined to hold that it would be sufficient. See, also, Fowler v. Bush, 21 Pick. 230; Huse v. Alexander, 2 Metc. [Mass.] 157; Page v. Hubbard [Case No. 10,663]. Judge Sprague held in the case last named that the doctrine of the courts of Massachusetts does not go further than to consider the taking of a negotiable instrument as a substitute for a pre-existing debt, where that would not impair any security or right of the creditor, and accordingly determined in the case before him that the lien was not displaced or impaired by the subsequent taking of negotiable promissory notes. Without laying down any general rule as applicable to all cases, but confining the decision to the question under consideration, I am of opinion, on the facts of this case, that the bills of exchange were not received in payment of the repairs and supplies, and consequently that the lien was not displaced by that transaction. They were made and furnished in the port of a state other than the one to which the vessel belonged, and the bills of exchange were drawn and received by the libellant under the law of Virginia, where the taking of a negotiable security for a pre-existing debt is not presumed to be payment. The Chusan [Id. 2,717]. Those bills were accepted by one only of the owners of the vessel who were liable for the original debt; and there is much reason to conclude from the evidence, that when he accepted them, it was with the intent to defraud the libellant out of his debt. For these reasons, as well as for the one already mentioned, that the account current shows that it was not the intention of the parties that the account should be considered as extinguished until the last bill of exchange was paid, I hold that the lien in this case is not displaced; and as the bills of exchange were produced at the hearing, and remain on the files of the court to be cancelled, the libellant is entitled to recover in this suit. The decree of the district court is therefore affirmed with costs.

[NOTE. By the local laws of Maine and Massachusetts, the acceptance of the debtor's negotiable paper for a pre-existing debt by simple contract is a payment and extinguishment of the debt. The Betsy and Rhoda, Case No. 1,-366; Palmer v. Elliott, Id. 10,690; Baker v. Draper, Id. 766; Kimball v. The Anna Kimball, Id. 7,772; Hudson v. Bradley, Id. 6,833. The reason of this departure from the principles of the common law is that the debtor might be inconvenienced and possibly obliged to pay the debt twice, as he could not defend against an innocent indorsee. The Betsy and Rhoda, supra. The law presumes that the creditor who has taken the security has renounced his right of action on the original contract. But this presumption may be rebutted by circumstances showing that the intention was otherwise, or that the paper accepted was not binding on all the parties previously liable, or that there was fraud, concealment, or the like. The Betsy and Rhoda, supra; Palmer v. Elliott, supra; Baker v. Draper, supra; Kimball v. The Anna Kimball, supra; Hudson v. Bradley, supra. The rule should be cautiously applied where the remedy on the new security is not as good and effectual as upon the one for which it was substituted. Baker v. Draper, supra.]