## Elias Brown *vs.* The Bankers and Brokers' Telegraph Company.

### *Agency—Rights of Principals—When knowledge of the Agent, is not Notice to the Principal.*

The appellant was employed by the agent of the appellee, to do certain work in fitting up offices for the latter, in the city of Baltimore; the work was done as required, and the offices were accepted by the appellee and used in the prosecution of its business. When the work was nearly done, the agent of the appellant applied to the agent of the appellee, for some money on account; the latter, thereupon, gave his post dated check, for $700, on Thomas & Co., Bankers, in the city of Baltimore, payable to the order of the appellant; but stated at the same time, that there was not then money enough with the bankers to pay it, but that he would be supplied with funds in time to pay it, by the treasurer of the appellee, who was then absent from town, but would return in a few days. On the faith of this statement, a receipt for the $700, was given by the agent of the appellant. On the day of the date of the check and several times afterwards, the check was presented to Thomas & Co., and payment demanded; but the same was refused on the ground, that there was not money enough to the credit of the drawer. Subsequently the appellant's agent called several times at the office of the treasurer of the appellee, and was told each time that he was out of town. Shortly after the check was given, the agent of the appellee drew a draft upon his principal, in favor of Thomas & Co., but being at the time largely indebted to his principal, payment was refused, until he brought in a number of vouchers, including the receipt for $700, when the draft was paid; it would not have been paid, if a satisfactory amount of vouchers had not been brought in. The account of the agent of the appellee, was finally closed on the books of the latter, by credits for vouchers brought in. Held:

1st. That the appellant is not entitled to recover from the appellee the amount of the check.

2d. That the knowledge of the agent of the appellee was not notice, either actual or constructive to his principal.

If a creditor of the principal settles with the agent, and takes a note or other security from the latter for the amount due by the principal, although, as between the parties, it is intended only as a conditional payment; yet if the creditor gives a receipt as if the money were re-

ceived, or the security were an absolute payment, so that the agent is thereby enabled to settle with the principal, as if the debt had been actually discharged, and the principal would otherwise be prejudiced, the debt will be deemed, as to the latter, absolutely discharged.

APPEAL from the Court of Common Pleas.

The cause was argued before BARTOL, C. J., NELSON, MILLER and ALVEY, J.

*Arthur George Brown* and *Frederick W. Brune,* for the appellant: ·

The facts of the case show actual notice to the appellee, because notice to Wainwright, who had actual knowledge of the whole transaction, was notice to his principal. Wainwright was the agent to make the contracts and payments, and was therefore the agent to receive notice. *Story on Agency,* sec. 140; *Boyd, et al. vs. Ches. & O. Can. Co.,* 17 *Md.,* 195.

The appellant did not suspect Wainwright of fraud or misrepresentation, and had no right to do so, and had nothing whatever to do with the Treasurer of the Company, and was not bound to call on him. *Story on Agency,* secs. 16, 126, 127, 135, 451; 1 *Parsons on Contracts,* sec. X; *Bank of the United States vs. Davis,* 2 *Hill,* 461.

The appellant was induced by the representations of Wainwright, which were untrue, to accept the check and give the receipt, and the appellee is bound by those representations. The appellee cannot take advantage of the fraud of its own agent. *Story on Agency,* sec. 127, *note, and sec.* 452; *Penn., &c., Steam Nav. Co. vs. Hungerford,* 6 *G. & J.,* 291; *De Voss vs. City of Richmond, Am. Law Reg., August,* 1868, *p.* 589; *Bank of the United States vs. Davis,* 2 *Hill,* 461–64, 65; *Sharp vs. Mayor, &c. of New York,* 40 *Barbour,* 272, 273; 1 *Parsons on Cont.,* sec. IX.

The appellee sustained no injury by giving the credit; it was a mere matter of book-keeping; the $3,000 which the

appellee paid on the 20th of July, were paid to Wainwright as agent, to pay the bills which the appellee owed. It was a transfer of the appellee's funds to a different account, for its own purposes only. The question whether or not the appellee sustained any injury, should have been left to the jury. *Macfarlane vs. Giannacopulo*, 3 *Hurl. & Norm.*, 860; *York Co. Bank of Penn. vs. Stein, et al*, 24 *Md.*, 447; 2 *Smith's Lead. Cases, Am. Ed.*, 435, top; *Heald vs. Kenworthy*, 10 *Exchequer*, 739.

The appellant dealt with the appellee, and looked to it for payment, and not to Wainwright personally, and took the check on the promise that the bank account was to be made good by the appellee. Wainwright was not legally liable on the check. *Story on Agency, sec.* 263; *Wyman vs. Gray*, 7 *H. & J.*, 409; *Sumwalt vs. Ridgely*, 20 *Md.*, 107.

Although the President of the Company, and Hyde, the Acting Treasurer, had notice as early as the middle of August, that the check had not been paid, the appellee finally settled its accounts with Wainwright on the 12th of October, without making any effort to get from him the money due the appellant, and without giving notice to the appellant that he must look exclusively to Wainwright. This was such *laches* on the part of the appellee as precludes it from insisting on the credit as a bar to the appellant's claim.

*Randolph Barton* and *William A. Fisher*, for the appellee:

The appellant having furnished Wainwright with a receipt, upon which he obtained credit with the appellee, and a further payment from it, it is discharged from the debt. *Wyatt vs. Marquis of Hertford*, 3 *East.*, 147; *Muldon vs. Whitlock*, 1 *Cowen*, 308; *Cheever vs. Smith*, 15 *Johns*, 276; *Fitler vs. The Commonwealth*, 31 *Penna.*, 406; *Paley on Agency*, 253; *Story on Agency, secs.* 433, 434 *and* 449; *State vs. B. & S. Steamboat Co.*, 13 *Md.*, 186.

The appellee having been supplying Wainwright with money in advance to pay in *cash*, the appellant had no

right to give him a *credit* by accepting a cheque post dated, and cannot hold the principal. *Paley on Agency,* 139, 162–245.

There is no evidence of what could be construed as a waiver on the part of any officer of the appellee. But it is submitted, that even if there had been an express waiver of the effect of the conduct of the plaintiff, as discharging the appellee, such act could not bind the appellee. *Merchants' Bank vs. Marine Bank,* 3 *Gill,* 125; *Angell & Ames on Corp.,* sec. 309.

The evidence shows that the President of the appellee was in Baltimore — and that although Mr. Janes, the Treasurer, was absent a great part of the time between the giving of the receipt and its presentation by Wainwright, there was an Acting Treasurer, Mr. Hyde, at the Treasurer's office, and the payment to Wainwright would have been prevented, had the appellant, or his agent, given notice of the nature of the transaction, in time, to any one of said officers.

NELSON, J., delivered the opinion of the Court.

This is an action of *indebitatus assumpsit* for work and labor done and materials furnished. The material facts are, that the plaintiff was employed by H. H. Wainwright, the superintendent and engineer of the defendant, having authority to make such contract, to supply materials, and do the carpenter's work in and about the offices of the defendant. Whilst the work was in progress, the agent of the plaintiff called on Wainwright for an advance of money on account; Wainwright handed said agent his check on the Banking house of Thomas & Co., in the city of Baltimore, for $200, and took from said agent his receipt; that check was promptly paid upon presentation. Afterwards, and when the work was completed, or nearly so, the agent of the plaintiff again called on Wainwright for money on account; this call was on the 3d day of July, 1865, Wainwright gave him his own check upon the same banking house for $700, post

dated the 8th of July, 1865, for which, the agent of plaintiff gave to him the following receipt:

OFFICE GENERAL SUPERINTENDENT OF THE
BANKERS AND BROKERS' TELEGRAPH CO.

. BALTIMORE, July 3d, 1865.

Received from H. H. Wainwright, Sup't, seven hundred dollars an account of carpenter's work, painting, &c., at office No. 132 Baltimore street.

Received,      ELIAS BROWN,
per G. C. B.

At the time the check was handed to the plaintiff's agent, Wainwright informed him there was not at that time money in the bank to pay it, but that the treasurer of the defendant would be in Baltimore in a few days, and would furnish him, Wainwright, with funds to meet it. The agent testifies, that he accepted the check and gave his receipt for it on the faith of this statement.

It is further in proof, by the witness Henry Janes, that in July and August, 1865, he was the treasurer of the defendant, and the receipt given by the plaintiff to Wainwright for $700 came in to him as a voucher in the defendant's account, on the 20th day of July, 1865; that the course of dealing with Wainwright by defendant was, the treasurer of the defendant charged Wainwright with the money paid him, and credited him with the vouchers for its disbursement as they were brought in by Wainwright. On the 14th day of July, 1865, Wainwright drew on the treasurer of the defendant in favor of Thomas & Co., Bankers, for $3,000, but he being at that time largely in the defendant's debt, it withheld payment of the draft until Wainwright, on the 20th of July, 1865, brought in a number of vouchers, including the receipt of the plaintiff for the $700, when the draft to Thomas & Co. was paid, but said draft would not have been paid but for Wainwright's bringing in a satisfactory amount of vouchers.

When Wainwright left the service of the defendant he was largely in its debt, and so continued until the 12th day of October, 1865, when his account with the defendant was finally closed on the defendant's books, by crediting him with vouchers brought in on that day; no money was received from him.

On these facts the defendant contends the plaintiff is not entitled to recover.

The principle of law applicable to this class of cases, is very clearly laid down by Judge STORY, in his Commentaries on the Law of Agency. In section 433, he says: "if a creditor of the principal settles with the agent, and takes a note or other security from the latter, for the amount due by the principal, although, as between the parties, it is intended only as a conditional payment; yet, if the creditor gives a receipt, as if the money were received, or the security were an absolute payment, so that the agent is thereby enabled to settle, and does settle with the principal, as if the debt had been actually discharged, and the principal would otherwise be prejudiced, the debt will be deemed, as to the latter, absolutely discharged." So the law has been adjudged to be, by LORD ELLENBOROUGH, in *Wyatt vs. The Marquis of Hertford, in* 3 *East's Reports,* 147, where his Lordship says: "if it had appeared that the defendant had in the interval inspected the steward's accounts, and had in any manner dealt differently with him on the supposition that this demand had been satisfied as the receipt imported, no doubt the defendant would have been discharged." The following authorities fully sustain the principle. *Muldon vs. Whitlock,* 1 *Cowen,* 290; *Heald and others vs. Kenworthy,* 10 *Exchequer,* 739; *Macfarlane vs. Giannacopulo,* 3 *Hurl. & Norm.,* 859.

The question is, has the defendant by this proof brought its case within the principle? The proof shows, that the plaintiff did settle with the agent of the defendant, and did give him a receipt as if the money were actually received by him, and did thereby enable the agent to settle with the de-

fendant, and the agent did settle with the defendant, as if the debt had been actually discharged, and the defendant was induced by the agent's production of the plaintiff's receipt with other vouchers, to pay a draft of its agent to Thomas & Co., which he would not have paid but for the production of said receipt with other vouchers. Squaring this proof with the requirements of the law as given by the authorities referred to, we think the defendant has clearly shown that its case is within the principle. It is contended, however, on the part of the plaintiff, that he is entitled to recover, because he acted in good faith and with due diligence. That the plaintiff may have acted with good faith, we have no right to question; but that he acted with diligence, we are not prepared to admit. It is true he presented the check at the bank on the day it fell due, and was told that Wainwright had no funds there to pay it. He presented it a second time, and received the same answer; this was enough to arouse his diligence and his suspicions of Wainwright's integrity, and he should have sought until he found the proper officer of the defendant and made known to him the facts; but he contents himself with calling, not long afterwards, at Janes' counting-room, and being informed by a clerk that Mr. Janes was out of town, he left without saying one word or making any inquiry.

He called a second time at Janes' counting-room, and was again informed that Mr. Janes was out of town; on this occasion he was asked by the clerk, whether he wished to see Mr. Janes particularly, to which he answered, yes, about business of the Telegraph Company, and said nothing more. The clerk's question had given him an opportunity for enquiry, and we make no doubt, if he had mentioned the circumstances of his case to the clerk, he would have been referred to Mr. Hyde, the then Acting Treasurer of the defendant, and his money would have been secured. He then goes to the office of the defendant, No. 132 Baltimore street, where he had been in the habit of seeing and dealing with Wainwright, and leaves a message for Wainwright,

with an employee of Wainwright, telling him that he had not been able to get the money for his check, and thus he leaves the matter, until after the 20th of July, 1865, and after Wainwright had obtained a credit from the defendant for $700, on his receipt. We think the plaintiff has acted carelessly, and that there is nothing he has done, from which it can be inferred, that the defendant had notice at, or before the settlement with Wainwright. Again, it is argued, that the defendant had actual notice, because notice to Wainwright was notice to the defendant, and he, Wainwright, had actual knowledge of the whole transaction. He was the agent to make the contracts and payments, and was therefore the agent to receive notice.

To this proposition we cannot assent. To negative the proposition, it might be sufficient to say, that not one of the Judges in the cases referred to above, even referred to such a proposition; nor does Judge STORY, in his very full statement of the rule governing such cases, intimate it. Indeed if such were the law, no such case could ever have arisen, for in every case the improper dealings with the agents, was the gist of enquiry, and in every case the agent improperly dealt with, must have been, as Wainwright was, cognizant of all the facts. Such a doctrine might lead to the utter destruction of corporate bodies, who act, as they must act, through agents, and would be extending constructive notice beyond all reasonable bounds to say, that the defendant must be held cognizant of facts, which circumstances show to have been intentionally concealed from it, by a fraudulent agent. We think the knowledge of Wainwright, under the circumstances in this case, was no notice, either actual or constructive to the defendant. The authorities referred to, we think sustain this proposition. From the views we have expressed, it follows that there was no error in the rulings of the Court of Common Pleas upon the prayers, and the judgment will therefore be affirmed.

*Judgment affirmed.*