HENRY BEHRMAN, AS SURVIVING PARTNER, APPELLANT, *v.* FREDERICK C. LINDE AND OTHERS, RESPONDENTS.

*Written contract — parol evidence, admissible where part only of the contract has been reduced to writing — proper to explain ambiguous terms — proper to explain the meaning of phrases used in the particular business.*

In this action, brought to recover the value of poultry delivered to defendants to be kept and preserved upon premises occupied by them, it appeared that after the poultry was received by the defendants they delivered to the plaintiff the following receipt : "Received for account and risk of Stege & Behrman, to be held in *cold storage* in cellar No. 4, 242 barrels poultry, deliverable to their order on payment of charges." While the poultry remained in the possesion of the defendants, a large portion of it was spoiled by reason of the fact that the temperature to which it was subjected, was not sufficient to secure its preservation. Evidence was offered by the plaintiff to show that an agreement had been entered into between the plaintiff and the defendants, that the poultry should be subjected by the defendants to such a degree of cold as would freeze it, which evidence was objected to by the defendants and was excluded.

*Held,* that such evidence was admissible; that where an instrument has been delivered, as the receipt was in this case, in part performance, or as an expression

in part only, of a preceding oral agreement, to which it is an incident, proof may be given of the terms of the residue of the oral agreement,

That the rule excluding parol evidence to explain, enlarge, restrain or contradict a written instrument, does not apply where the original contract was verbal and entire and a part only of it has been reduced to writing.

That the phrase "cold storage" being indefinite and ambiguous in its meaning, evidence to explain the significance and meaning of this phrase in the dealings of the parties, was competent and proper.

The plaintiff offered to prove that the phrase "cold storage" had such a degree of significance in the business in which it was employed, as required the poultry to be kept below freezing point. This proof was excluded.

*Held*, that the evidence was proper with a view to explain the meaning of the term used in the particular trade or occupation, such meaning being material in order to construe the contract.

APPEAL from a judgment entered on the dismissal of the plaintiff's complaint at the circuit.

*Adolph L. Sanger*, for the appellant.

*Edward S. Clinch*, for the respondents.

DANIELS, J. :

The appeal by the notice has been taken from an order denying a new trial as well as from the judgment, but as no order appears to have been entered and the motion was made to set aside the dismissal of the complaint which has not been permitted by the Code to be made on the minutes, all that is before this court for this decision are the questions arising upon the appeal from the judgment, and they depend upon rulings made by the court rejecting evidence offered by the plantiff.

The action was hrought to recover the value of poultry delivered to the defendants to be kept and preserved, upon premises occupied and used by them. After the poultry was received by the defendants, they delivered at the plaintiff's store in the city of New York, the following receipt :

"FRED'K C. LINDE & CO.

"St. John's Park (Beach Street Side).

"No. 1279.                      "New York, *August* 17, 1885.

"Received for account and risk of Stege & Behrman, to be held in cold storage in cellar No. 4, two hundred and forty-two (242) bbls. poultry.

| | | |
|---|---|---|
| 81 bbls | No. 1395 | Lot No. 1. |
| 37 bbls | No. 1552 | Lot No. 2. |
| 31 bbls | No. 1552 | Lot No. 3. |
| 7 bbls | No. 1596 | Lot No. 4. |
| 19 bbls | No. 1552 | Lot No. 5. |
| 12 bbls | No. 1596 | Lot No. 6. |
| 55 bbls | No. 1395 | Lot No. 7. |

242

" Deliverable to their order on payment of charges.

" FRED'K C. LINDE & CO.
" Storage per month ½c. lb.         " Per WM. H. SPENCER.

" This receipt is *not negotiable*, and the property mentioned therein may be withdrawn upon order and without its return. It will be exchanged at the office of the company for a negotiable receipt, if desired.

" See General Warehouse Act."

While the poultry remained in the possession of the defendants, a large portion of it was spoiled by reason of the fact that the temperature to which it was subjected, was not sufficient to secure its preservation. Evidence was offered upon the trial to prove the fact that an agreement was made between the plaintiff and his deceased partner, and the defendants, acting through their agent or manager, William H. Spencer, that the poultry should be subjected to such a degree of cold as would freeze it, and in that manner secure its preservation while it remained in the defendants' possession. This evidence was objected to on the part of the defendants and it was excluded by the court. The rulings made excluding the evidence were not for the want of any authority in Spencer to bind the defendants by the agreement stated to have been made with him, and it could not have been so excluded for the testimony, as it was given, proved the fact that Spencer was in the management of this business for the defendants, and had previously made arrangements and contracts with the plaintiff and his partner for the storage and preservation of other property. The evidence was abundant to establish his authority to act for and contract in the name of the defendants. That which was so offered was excluded under the

most general form of objection. And reliance has been made for the support of these rulings upon the principle that parol evidence is not admissible to extend, qualify or explain a written instrument. But if the agreement was made, which the plaintiff and his partner proposed to prove had been entered into, it did not fall within the operation or effect of this rule. For the receipt which was the only writing which passed between the parties, was not made or delivered until after the goods had been placed in the store under what was alleged to have been a preceding oral agreement, defining the degree of cold to which the poultry was to be subjected for the amount agreed to be paid, and which afterwards was paid by the plaintiff and his partner. As the evidence was offered on behalf of the plaintiff, the case, if it had been received, would have disclosed a preceding agreement made by words alone, for the storage of the poultry in such a degree of cold as would have frozen it and in that manner preserved it from injury or spoiling while it remained in the possession and at the establishment of the defendants. This was the import of the offers made which the court excluded, and it is to be assumed, in considering the rulings excluding this evidence, that if it were not for such rulings the proof would have established the fact to which it was obviously directed. The question therefore has arisen in the case whether this evidence was competent.

It is manifest from the inspection of the receipt that it was not so made or accepted as to cover or include the broad ground of the preceding contract, which the evidence was offered to prove. What the plaintiff more especially desired to establish was, the degree of cold storage to which the property should be subjected. He did not propose to contradict or explain the receipt, so far as it proceeded, but to add to it an attribute of the agreement which it was urged had been omitted from it, by its failure to define the degree of cold in which the property was to be maintained. The evidence if it had been received would in no manner have contradicted or restrained the receipt in its operation and effect, but it would have proved the part of the original agreement alleged to have been made between the parties, which, by reason of its brevity, failed to find its way into the receipt. And where that appears to be the case, there, the party insisting upon his right of action under the agreement itself, is permitted to prove that agreement for the pur-

pose, with the receipt, of exhibiting its extent and effect. The general principle of the law applicable to this part of the case is that where an instrument has been delivered in part performance or as an expression only in part of a preceding oral agreement, or to which it is an incident, proof may be given of the terms of the residue of the oral agreement. (*Hutchins* v. *Hebbard*, 34 N. Y., 24, and *Hope* v. *Balen*, 58 id., 380.) Where the law was stated to be "that where a verbal contract is entire, and a part only in part performance is reduced to writing, parol evidence of the entire contract is competent." (Id., 382.) And *Chapin* v. *Dobson* ('78 N. Y., 74) where it was said, that the rule excluding parol evidence to explain, enlarge, restrict or contradict a written instrument, does not apply where the original contract was verbal and entire, and a part only of it has been reduced to writing. (Id., 79.) And in a somewhat different form this was followed in *Briggs* v. *Hilton* (99 N. Y., 517). In *Blossom* v. *Griffin* (3 Kernan, 569), an oral agreement had been made for the transportation of goods by the defendants as common carriers. They afterwards received a portion of such goods and executed and delivered a receipt to the persons from whom they were obtained, stating that the goods were to be forwarded. This receipt, if it had been held to exclude evidence of the preceding oral agreement, would have restricted the obligation of the defendants to that of mere forwarders, when by the agreement previously entered into between them they were subjected to the duties and liabilities of carriers. And the disposition of the case was dependent upon the question whether the preceding oral agreement could be proved to exhibit the previous obligations of the defendants, and the court held that it could. And as the evidence was admissable for this purpose in that case, the present in its controlling features not being distinguishable from it, it follows that the same ruling should have been made upon the trial of this action, and that the court erred in excluding the proof which was offered to establish the fact that the defendants had agreed to subject the poultry to such a degree of cold as would certainly secure its wholesome preservation.

The phrase "cold storage" used in the receipt is indefinite and ambiguous in its meaning. What degree of cold storage or what degree of temperature was intended to be provided for by the use

of this phrase has been made in no wise apparent, but its meaning is obscure and indefinite. It might in view of the circumstances possibly be construed to require such a degree of cold storage as would secure the preservation of the poultry, as that was the object of the plaintiff and his partner in placing it in the custody and establishment of the defendants. But as an ambiguous, obscure and indefinite phrase, the evidence which was offered was entitled to be received to explain the significance and meaning of this phrase in the dealings of these parties. *Corse* v. *Peck* (102 N. Y., 513), where it was held, by the court agreeing to the opinion of ANDREWS, J., that evidence of the preceding conversations and negotiations of the parties would be admissible where it became " necessary to explain ambiguous provisions, the meaning of which cannot be ascertained with certainty by an inspection of the written instrument." (Id., 515, 516.) And as much as this was said in the opinion of the court in *Moore* v. *Meacham* (10 N. Y., 207), where it was stated that " the parties differed in relation to the true interpretation that should be given to their language while bargaining. In such case, extrinsic facts are frequently resorted to to aid in the interpretation of language susceptible of more than one construction and are competent for that purpose." (Id., 211.) And under these authorities and the principles established by them, the court seems to have conspicuously erred in excluding the evidence offered on the part of the plaintiff.

The plaintiff further proposed to prove that the phrase " cold storage " had such a degree of significance in the business in which it was employed as required the poultry to be kept below freezing point, and in that manner to prevent it from spoiling. This was the effect, though not precisely the language in which the offer to produce the proof was made. That was in like manner objected to on the part of the defendants, and the proof was excluded. But this evidence certainly should have been received by the court, for the legal rule is that " evidence is always admissible to explain the meaning of terms used in any particular trade or occupation, when their meaning becomes material in order to construe a contract; and the principle on which the rule is founded extends to forms of expression commonly used in any particular business as well as to single words." In both cases the

evidence is admitted as a means of enabling the court to declare what the language of the contract did actually express to persons standing in the position of the contracting parties, and so to ascertain what it does express to the court, which, for this purpose, is bound to place itself in their position. (*Dana* v. *Fiedler*, 2 Kern., 40–46.) And the same rule was approvingly mentioned in *Collender* v. *Dinsmore* (55 N. Y., 201–206), and in *Sheldon* v. *Benham* (4 Hill, 129).

The plaintiff's action apparently failed for the want of this and the other evidence reasonably offered and erroneously rejected by the court. The value of the property which had been spoiled by the failure to freeze it was proven upon the trial. It was a very considerable amount, resulting from the loss of the greater part of 242 barrels of poultry. And the case was so far proved, if the other evidence had been received, as to require its decision by the jury.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

Van Brunt, P. J., and Brady, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.